# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **STEVEN SANTELLA** and **SONYA SANTELLA,** | Case No. 3:12-mc-00131-SI |
| Plaintiffs, | |
| v. | **AMENDED OPINION AND ORDER** |
| **GRIZZLY INDUSTRIAL, INC. f/k/a Grizzly Imports, Inc.,** | |
| Defendant, | |
| v. | |
| **SAWSTOP, LLC; SD3, LLC;** and **STEPHEN F. GASS, PH.D.,** | |
| Subpoenaed Entities. | |

Jeffrey Steven Shelly, BOIES, SCHILLER AND FLEXNER, Albany, New York.  Attorneys for Plaintiffs.

James D. Meadows, BALCH & BINGHAM, LLP, Atlanta, Georgia; and Kenneth J. Abere, Jr., COSGRAVE VERGEER KESTER, LLP, Portland, Oregon.  Attorneys for Defendants.

David A. Fanning, SAWSTOP, LLC, Tualatin, Oregon.  Attorneys for Subpoenaed Entities.

**SIMON, District Judge**.

This Amended Opinion and Order supersedes and replaces the Opinion and Order dated September 17, 2012.  (Dkt. 27.)

This action involves discovery disputes arising out of third-party subpoenas served on three related entities in Oregon by the defendant in a federal court lawsuit in Texas.  I previously granted in part and denied in part a motion to compel brought by the defendant against these subpoenaed entities.  There are currently four additional discovery disputes pending before this court.  This Opinion and Order addresses the first three.  First, in connection with the defendant's original motion to compel (Dkt. 3), the court received and reviewed *in camera* unredacted copies of several documents that the subpoenaed entities have made available to the defendant only in redacted form.  In Section II(A) below, I rule on which of those documents must be provided to the defendant without redaction and which may remain in redacted form.  Second, in preparation for an evidentiary hearing currently scheduled for September 24, 2012 (Dkt. 18), the subpoenaed entities ask for certain documentary discovery from the defendant.  Dkt. 19.  I rule on that motion in Section II(B) below.  Third, the plaintiff has moved for leave to provide certain documents to the court for *in camera* review as part of the court's consideration of the issue that will be considered at the September 24th hearing.  Dkt. 26.  I rule on that motion in Section III(C) below.  Finally, the fourth pending discovery dispute will be resolved after the September 24th evidentiary hearing.

## I.    BACKGROUND

Plaintiffs Steven and Sonya Santella ("Plaintiffs") sued Defendant Grizzly Industrial, Inc. ("Grizzly" or "Defendant") in a products liability action in federal court in Austin, Texas (the "Texas Lawsuit").  The Texas Lawsuit is styled *Steven and Sonya Santella v. Grizzly Industrial,*

*Inc. f/k/a Grizzly Imports, Inc.,* Civil Action No. 1-11-CV-00181-LY (W.D. TX).  In the Texas Lawsuit, Grizzly caused subpoenas to be issued by the federal court in Oregon and served on three related non-parties, SawStop, LLC ("SawStop"), SD3, LLC ("SD3"), and Stephen F. Gass, Ph.D. ("Dr. Gass") (collectively "the Subpoenaed Entities" or, on occasion, simply as "SawStop").  Plaintiffs, Grizzly, and the Subpoenaed Entities are collectively referred to as the "Parties."  Grizzly's subpoenas required the production or inspection of responsive documents in Oregon, where all three Subpoenaed Entities reside.  The Subpoenaed Entities objected to certain requests contained in Grizzly's subpoenas.  Grizzly then commenced this miscellaneous action under Fed. R. Civ. P. 45(c)(2)(B)(i), seeking an order compelling discovery.  Dkt. 1.  After reviewing legal memoranda and related material, the court held a hearing.  The court granted in part and denied in part Grizzly's motion to compel.  Dkt. 13.  As stated on the record, the court also agreed to receive for *in camera* review unredacted copies of several documents that the Subpoenaed Entities have only produced to Grizzly in redacted form.  The court has completed its review, and the court's ruling is presented below in Section II(A).

The court also entered a protective order to restrict the disclosure of confidential and trade secret information.  Dkt. 16.  Thereafter, additional discovery took place.  The Parties, however, continue to have discovery disputes.  Before discussing the specifics of these disputes, further background concerning the Texas Lawsuit and the relationship of the non-party Subpoenaed Entities to that lawsuit will be helpful.

Dr. Glass invented and patented "flesh detection" safety technology for power saws and other similar woodworking equipment.  That technology is sometimes referred to as the "SawStop technology."  Dr. Gass is president of SawStop and holds both a Ph.D. in physics and a law degree.  He has worked as a patent attorney and is a lifelong "woodworker."  The SawStop

technology "includes a safety system that detects accidental contact between a person and the

spinning blade of a saw, and then reacts to minimize any injury." Dkt. 2, at page 13 of 103

(¶¶ 2-3). Dr. Gass filed the first patent application describing the SawStop technology in 1999,

and since then the U.S. Patent and Trademark Office has issued numerous patents "disclosing

various implementations, features and improvements related to the technology." *Id.* at 14 (¶ 8).

According to Grizzly, Dr. Gass brought the first SawStop table saw on the market in 2004. *Id.*

at 1. Grizzly also states that Dr. Gass, along with his law partners, formed SD3 to hold the

SawStop patents. *Id.* at 1-2.

Grizzly manufactures table saws that do not incorporate the SawStop Technology.

According to Grizzly, Plaintiff Steven Santella "was injured when his left hand contacted the

unguarded blade on the Grizzly table saw as he reached his hand into the blade to remove scrap

pieces he had already cut." *Id.* at 2. Plaintiffs sued Grizzly in the Texas Lawsuit for negligence

and strict liability, seeking compensatory and punitive damages. Plaintiffs allege that Grizzly's

table saw was "defectively designed because it lacks the flesh-detection technology." *Id.* at 2-3.

In the Texas Lawsuit, Dr. Gass has provided a report in which he opines: "It is both

economically and technically feasible to redesign the [Grizzly] saw at issue to incorporate the

SawStop technology." *Id.* at 38 (¶ 66). Dr. Gass also opines in his report that the SawStop

technology was feasible when the Grizzly table saw at issue in the Texas Lawsuit was

manufactured in approximately 2004 and that Plaintiff Steven Santella's injury would have been

minor if Grizzly had incorporated the SawStop technology. *Id.* at 36-38 (¶¶ 64-66).

Dr. Gass begins his report submitted in the Texas Lawsuit by noting that he has been

asked by Plaintiffs' attorneys to "provide fact and expert testimony" in the Texas Lawsuit and is

"willing to do so." *Id.* at 12. Dr. Gass then adds: "However, I am neither retained nor specially

employed to provide expert testimony, and therefore, I understand a written report of my opinion is not required." *Id.* at 12. Presumably, this is why Grizzly sought discovery relating to the Subpoenaed Entities through a Rule 45 subpoena to non-parties, rather than under Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure (relating to discovery from expert witnesses who have been "retained or specially employed to provide expert testimony in the case").

In his report, Dr. Gass also states that by 2007, the "SawStop saws had become the best-selling industrial table saws in the market." *Id.* at 36 (¶ 63). Grizzly asserts that Dr. Gass "has repeatedly refused to license the patented SawStop technology to Grizzly since 2007." *Id.* at 2. Grizzly states that it has subpoenaed the production of documents relevant to the SawStop technology and other documents "in order to show bias on the part of Gass" and because they are "relevant to Plaintiff's claims and Grizzly's defenses, and are crucial to Grizzly's ability to effectively cross-examine Gass" in the Texas Lawsuit. *Id.*

Because SawStop and Grizzly compete in the manufacture and sale of table saws, this court entered a two-tier protective order. Dkt. 16. One tier provides limitations on the disclosure of documents that a producing party identifies as "Confidential." The second tier provides greater limitations on the disclosure of even more competitively sensitive documents that a producing party identifies as "Attorneys' Eyes Only." Among other provisions and restrictions in the protective order, information provided by the Subpoenaed Entities to Grizzly that are marked "Confidential" may be disclosed to Grizzly's "In-house counsel" and to Grizzly's other "[e]mployees, directors, or officers . . . but only to the extent necessary for the defense of this litigation." Dkt. 16 at 5 (¶ 7(b)-(c)). Information marked "Attorneys' Eyes Only," however, may not be shown to such persons, without either the express consent of the Subpoenaed Entities

or court authorization. *Id.* at 5 (¶ 8). The protective order further provides that before any information designated as "Confidential" or "Attorneys' Eyes Only" may be disclosed to an "independent consultant or expert witness," the party seeking such disclosure must first send to counsel for the Subpoenaed Entities "a document setting forth the identities of the independent consultants or expert witnesses." *Id.* at 6 (¶ 10). The Subpoenaed Entities shall then have fifteen days in which to object to the disclosure of information to the identified individual(s). *Id.* If such an objection is timely made, the party seeking to disclose protected information to that independent consultant or expert may move the court for leave to do so but may not make any such disclosure without having first received permission from the court. *Id.*

Grizzly has retained as its independent consultant and expert Mr. Peter Domeny. The Subpoenaed Entities timely objected. The court has scheduled an evidentiary hearing for September 24, 2012, at 9:30 a.m., Dkt. 18, on the issue of whether "Attorneys' Eyes Only" material may be disclosed to Mr. Domeny. The Subpoenaed Entities have filed a Motion for Limited Discovery Prior to Evidentiary Hearing. Dkt. 19. Grizzly opposes that motion. Dkt. 22. The court's ruling on that motion is set forth below in Section II(B).

## II.    DISCUSSION

### A.    Grizzly's Motion to Compel Production of Unredacted Documents (Dkt. 3)

In response to Grizzly's third-party subpoenas, the Subpoenaed Entities provided a number of documents. Grizzly objects to the fact that nine pages of those documents contain redactions based on the Subpoenaed Entities' assertion of "attorney-client privilege" and other objections. The Subpoenaed Entities provided unredacted copies to the court for review *in camera.* The court's rulings with regard to each redacted document are discussed below.

1.    <u>SawStop 000013</u>

This page is part of a 70-plus page document entitled "SD3, LLC Offering Package for Regulation D Offering of Membership Interests to Accredited Investors."  (SawStop 000006-79.) The redacted sentence on page 13 is part of a larger discussion that explains to prospective investors why SawStop's business strategy is expected to succeed.  SawStop contends that the redacted sentence contains an attorney-client privileged communication from SawStop to third-party prospective investors with whom there is a "community of interest," according to SawStop.

The attorney-client privilege "protects confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an attorney's advice in response." *U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *U.S. v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997)) (internal quotations omitted).  The privilege, however, is strictly construed.  *Id.* (citing *U.S. v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)).  The party asserting the privilege bears the burden to prove each element of an eight-part test used to determine if information is privileged:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Id.* at 607–08 (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992)).

"The privilege may be waived by voluntary disclosure."  *United States v. Plache*, 913 F.2d 1375, 1379 (9th Cir. 1990) (citing *Clady v. County of Los Angeles*, 770 F.2d 1421, 1433 (9th Cir. 1985)).  Further, disclosure "of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject."

*Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) (citations omitted).

The Subpoenaed Entities argue that that the redacted information in the offering documents expresses attorney opinions involving intellectual property. They further argue that dissemination of the offering documents to potential investors did not waive the privilege because of the "community of interest" doctrine.

The "community of interest" doctrine is defined, by the Federal Circuit in the context of patent litigation, as preserving the privilege where "the same attorney represents the interests of two or more entities on the same matter." *In re Regents of Univ. of California*, 101 F.3d 1386, 1389 (Fed. Cir. 1996). No evidence has been presented to the court in connection with the pending discovery disputes that the attorneys for SawStop also served as counsel for and represented the interests of the prospective investors. Thus, under the Federal Circuit's approach there is no "community of interest," and any attorney-client privilege that might have existed over some statement in the offering document was waived when SawStop provided that document to prospective investors.

In addition, the Ninth Circuit has adopted an even narrower exception to the waiver rule for "common interests" than has been articulated by the Federal Circuit. *See In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012). In the Ninth Circuit, the attorney-client privilege is not waived when disclosure is made to "allow attorneys for different clients pursuing a common legal strategy to communicate with each other;" however, "the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement— whether written or unwritten." *Id.* (citations omitted). Further, the exchange of information

must have been "intended to facilitate representation" of either party. *Id.* at 1129–30 (citing *Hunydee v. U.S*, 355 F.2d 183, 185 (9th Cir. 1965)). The Subpoenaed Entities have made no such showing this this case, which further confirms that disclosure to prospective investors waived the attorney-client privilege.

Moreover, the district court decision cited by the Subpoenaed Entities is distinguishable. In *Hewlett-Packard*, the court required "a common legal interest," which it then found satisfied because it was "quite likely that defendant and [the third party] would be sued by plaintiff." *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 310 (N.D. Cal. 1987). In the present dispute, there is no such threat. Additionally, the court in *Hewlett-Packard* supported its holding by concluding that the defendant's disclosure was "selective" because it was disseminated to a limited audience with conditions of confidentiality. *Id.* (citing *Developments in the Law—Privileged Communications*, 98 Harv. L. Rev. 1450, 1629–65 (1985) (discussing "selective waiver"). The Ninth Circuit, however, has since declined to adopt "selective waiver" as an exception to the attorney-client privilege doctrine. *See In re Pac. Pictures*, 679 F.3d at 1128-29.

Thus, the Subpoenaed Entities waived any claim of attorney-client privilege when they distributed the offering documents to third-party prospective investors. The Ninth Circuit has cautioned that "unmoor[ing] a privilege from its underlying justification . . . would be at least failing to construe the privilege narrowly." *Id.* The purpose of the attorney-client privilege is to "encourage full disclosure to one's attorney in order to obtain informed legal assistance." *Id.* at 1127. Here, that purpose would not be enhanced by protecting the Subpoenaed Entities' disclosure to prospective investors because that disclosure was not made for the purpose of securing representation, either for themselves or for their potential investors, but instead was

made to solicit investment capital.  Accordingly, an unredacted copy of SawStop 000013 must be produced to Grizzly not later than September 20, 2012.

    2.    <u>SawStop 000016</u>

SawStop 000016 is part of the same offering document that contains SawStop 000013, and the two redacted sentences are of a similar quality to the redacted sentence on page 13. Accordingly, for the reasons discussed above, an unredacted copy of SawStop 000016 must be produced to Grizzly not later than September 20, 2012.

    3.    <u>SawStop 000090</u>

SawStop 000090 is part of a similar, but not identical, offering document entitled, "SD3, LLC Offering Package for Regulation D Offering of Membership Interests to Accredited Investors." (SawStop 000080-151.)  The redacted sentence on page 90 is of a similar quality to the redacted sentence on SawStop 000013.  Accordingly, for the reasons discussed above, an unredacted copy of SawStop 000090 must be produced to Grizzly not later than September 20, 2012.

    4.    <u>SawStop 000282</u>

SawStop 000282 is part of a document entitled, "Minutes of the Annual Meeting of SD3, LLC." (SawStop 000281-284.)  The redacted two sentences appear to communicate legal advice provided to the members of this limited liability company at its annual meeting held on February 17, 2006.  They are, therefore, protected under the attorney-client privilege, and an unredacted copy of page 282 need not be produced.

    5.    <u>SawStop 000294</u>

SawStop 000294 is part of a document entitled, "Minutes of the Annual Meeting of SD3, LLC." (SawStop 000292-295.)  The redacted sentence appears to communicate legal advice

provided to the members of this limited liability company at its annual meeting held on May 21 ,

2010.  It is, therefore, protected under the attorney-client privilege, and an unredacted copy of

page 294 need not be produced.

      6.    <u>SawStop 000296, 297, and 298</u>

      SawStop 000296, 297, and 298 are part of a document entitled, "Minutes of the Annual

Meeting of SD3, LLC."  (SawStop 000296-302.)  Several of redacted portions appear to

communicate legal advice provided to the members of this limited liability company at its annual

meeting held on May 13, 2011.  They are, therefore, protected under the attorney-client privilege

and unredacted copies need not be produced.

      Other redacted portions, however, while not reflecting communications that would be

protected under the attorney-client privilege, appear to discuss technological enhancements or

other competitive developments unrelated to the issues pending before this court.  During the

oral argument held on August 24, 2012, Grizzly's counsel stated that his client is not seeking the

disclosure that sort of information.  Accordingly, unredacted copies of pages 296, 297, and 298

need not be produced.

      7.    <u>SawStop 000304</u>

      SawStop 000304 is part of a document entitled, "Minutes of the Annual Meeting of SD3,

LLC."  (SawStop 000303-311.)  None of the redacted portions appear to communicate legal

advice provided to the members of this limited liability company at its annual meeting held on

May 18, 2012.  They do, however, appear to discuss technological enhancements or other

competitive developments unrelated to the issues pending before this court.  During the oral

argument held on August 24, 2012, Grizzly's counsel stated that his client is not seeking the

disclosure that sort of information.  Accordingly, an unredacted copy of page 304 need not be produced.

**B.  Subpoenaed Entities' Motion for Discovery Prior to Evidentiary Hearing (Dkt. 19)**

As explained above, on September 24, 2012, the court will hold an evidentiary hearing to determine whether Grizzly's selected independent expert and consultant, Mr. Peter Domeny may be permitted to see copies of the documents that the Subpoenaed Entities have produced to Grizzly but have marked "Attorneys' Eyes Only" pursuant to the protective order entered in this matter.  Dkt. 16.  Mr. Domeny has signed a copy of Exhibit A to the protective order and has provided two affidavits and a copy of his resume.  Dkts. 22-3 and 22-4.  The Subpoenaed Entities, however, argue *that* Mr. Domeny "should not be allowed to see the confidential and trade secret information because he will unavoidably use that information against SawStop outside of this litigation due to his central and extensive involvement in the industry's opposition to active injury mitigation technology.  SawStop is also concerned that Domeny might reveal, inadvertently or otherwise, SawStop's confidential information to SawStop's competitors and adversaries due to his close affiliation with them."  Dkt. 20 at 1.  In order to prepare for the September 24th evidentiary hearing, SawStop requests the court "to require Grizzly to produce documents relating to Domeny's past and present work."  *Id.* at 2.  SawStop argues that these "documents are necessary to demonstrate Domeny's involvement in the industry's opposition to SawStop, and to allow SawStop to verify Domeny's testimony and impeach him if his testimony contradicts the documentary evidence."  *Id.*

Grizzly has agreed that "Domeny will voluntarily produce non-confidential documents relating to the PTI's [Power Tool Institute's] lobbying with the Consumer Protection Safety Commission ("CPSC") and the State of California.  Domeny will also produce his billing records

from January 1, 2011 forward." (Dkt. 22 at 3.)  Grizzly states that it is not willing to voluntarily produce anything else in response to SawStop's request.  *Id.*

Paragraph 10 of the protective order entered in this matter requires a party seeking to disclose "Confidential" or "Attorneys' Eyes Only" material to an independent consultant or expert witness first to provide:

> a document setting forth the identities of the independent consultants or expert witnesses, their education, their involvement designing or manufacturing power tools, and their work or involvement with power too manufacturers or retailers, and copies of signed agreements attached hereto as Exhibit A.

Dkt. 16 at 6 of 11 (¶ 10).  It appears that Grizzly has done that with regard to Mr. Domeny.

The Subpoenaed Entities, however, also seek discovery of all emails, letters and other communications concerning SawStop, the SawStop technology, or any active injury mitigation technology, between Mr. Domeny and any power tool manufacturer, the Power Tool Institute, UL, the U.S. Consumer Product Safety Commission, or the IEC.  Dkt. 20 at 4.  The Subpoenaed Entities also seek "[a]ll notes and records of meetings of the Power Tool Institute, the Power Tool Institute's committees, UL, one of UL's committees or the IEC harmonization committee," during which SawStop, the SawStop technology, or any active injury mitigation technology was mentioned.  *Id.*  The Subpoenaed Entities further seek all documents "referring or relating to testing of the SawStop technology" in which Mr. Domeny participated or on which he commented and all documents "reflecting or relating to work or advocacy by Mr. Domeny relating to the development, evaluation, adoption, or rejection of standards, governmental or otherwise, relating to active injury mitigation technology or any alternatives therefore."  *Id.* at 5. In addition, the Subpoenaed Entities seek Mr. Domeny's billing records since January 1, 2011, but as noted above Grizzly has agreed to produce those records.

The documents that the Subpoenaed Entities seek from Grizzly appear to go beyond the proper scope and focus of this court's evidentiary hearing scheduled for September 24th.  At the upcoming hearing, the court will attempt to determine whether Grizzly's chosen independent consultant and expert, Mr. Domeny, may be permitted to see the Confidential or Attorneys' Eyes Only material produced by the Subpoenaed Entities pursuant to Grizzly's subpoenas, subject to the terms of the protective order entered by this court.  As part of that inquiry, the court anticipates having to resolve the following questions, perhaps among others:

1.   What is the applicable standard that the court should apply in determining whether Mr. Domeny may be given access to the Subpoenaed Entities' Confidential or Attorneys' Eyes Only material produced to Grizzly in response to Grizzly's subpoenas?  (This is a legal question.)

2.   What is the applicable burden of proof and who bears that burden as between the Subpoenaed Entities and Grizzly?  (This is a legal question.)

3.   As between the Ninth Circuit and the Federal Circuit, whose law applies to this discovery dispute, and are there any material differences in the law of these two circuits?  (This is a legal question.)

4.   Is Mr. Domeny "independent" as that term is used in the protective order?  *See Streck, Inc. v. Research & Diagnostic Systems, Inc.,* 250 F.R.D. 426, 433 (D. Neb. 2008); *Biovail Labs. Int'l SRL v. Abrika, LLLP,* No. 04-61704-CIV, 2007 WL 788849 (S.D. Fla. Mar. 14, 2007).

5.   Is there an "unacceptable opportunity for inadvertent disclosure" based on any involvement that Mr. Domeny currently has or is likely to have in the future in any "competitive decision-making" for any competitor of any of the Subpoenaed Entities?  In this regard, does "competitive decision-making" mean anything more than providing advice or participation in any competitor's decisions concerning pricing, product design, or the like, including possibly patent prosecution?  *See In re Deutsche Bank Trust Co. Americas,* 605 F.3d 1373, 1378-79 (Fed. Cir. 2010); *Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1470-71 (9th Cir. 1992); *see also Telular Corp. v. VOX2, Inc.,* No. 00-C-6144, 2001 WL 641188 (N.D. Ill. June 4, 2001); *Advanced Semiconductor Materials Am. Inc. v. Applied Materials Inc.,* No. C-95-20169-RMW (EAI), 1996 WL 908654 (N.D. Cal. Oct. 28, 1996).

6.   What is the potential harm to Grizzly if it is not allowed to show the Subpoenaed Entities' Confidential or Attorneys' Eyes Only material to Mr. Domeny, and must instead select a different independent consultant or expert?  *See In re Deutsche*

*Bank Trust Co. Americas,* 605 F.3d 1373, 1380 (Fed. Cir. 2010); *Biovail Labs. Int'l SRL v. Abrika, LLLP,* 2007 WL 788849 (S.D.Fla. Mar. 14, 2007).

7.    Is any evidence that Mr. Domeny will not abide by the terms of the protective order entered in this case?

8.    Have any of the Subpoenaed Entities previously had a confidential relationship with Mr. Domeny under which they disclosed confidential information to him? *See Novartis AG v. Apotex, Inc.,* 2011 WL 691594 (D.N.J. Jan. 24, 2011).

After the court receives additional briefing and argument from the Parties, it is possible that some of these questions may need to be modified, abandoned, or supplemented. At this time, however, it appears to the court that much of the additional material that the Subpoenaed Entities seek from Grizzly (or from Mr. Domeny, through Grizzly) are beyond the scope of what the court needs in order to resolve the particular discovery dispute that is the subject of the September 24th evidentiary hearing. Accordingly, at this time, the court will not require Grizzly (or Mr. Domeny) to produce any other documents before the September 24th hearing, other than what Grizzly has already agreed to provide.

**C.    Plaintiffs' Motion for Leave to Submit Documents for *In Camera* Review (Dkt. 26)**

On September 12, 2012, Plaintiffs moved for leave to provide to the court – and only to the court – certain documents relating to Mr. Domeny for the court's *in camera* review in anticipation of the September 24th hearing. Dkt. 26. Plaintiffs note that Grizzly opposes this motion. *Id.* Plaintiffs explain that "Plaintiff is not seeking to limit Mr. Domeny, Grizzly, or SawStop from viewing these documents, but the Protective Order [issued by the U.S. District Court in the District of Massachusetts in a different lawsuit] absolutely precludes Plaintiff from producing them." Dkt. 26-1 at 2 (citing Dkt. 26-2).

The court has reviewed *in camera* the documents provided by Plaintiffs. They all appear to be redacted copies of meeting minutes from selected meetings of the Joint Venture Oversight Committee of the Power Tool Institute ("PTI"), the Product Liability Coordinators Committee

Meeting of the PTI, the Joint Venture Committee of the PTI, the Joint Venture Mechanical

Guarding Committee of the PTI, and the Board of Directors of the PTI, as well as a final

attendance list from and agenda for a meeting of the Joint Venture Oversight Committee Meeting

of the PTI. These documents appear to have been produced, subject to a protective order, in the

case of *Corbett v. The Black & Decker Corporation, et al.,* Civil Action No. 1:12-cv-10137-JLT

(D. Mass.). The redacted documents produced to this court *in camera* by Plaintiffs are marked:

BD-Corbett 005150-53, 5384-86, 6556-58, 6605-10, and 6636-45.

Plaintiffs are hereby directed promptly to inform the U.S. District Court for the District of

Massachusetts in the *Corbett* case as well as all parties in that case: (1) that Plaintiffs have

provided these redacted documents to this court *in camera* for use in this case; (2) that this court

is requiring that Plaintiffs make these documents (unless further redaction is stipulated to by the

Parties) available in this case to counsel for both Grizzly and the Subpoenaed Entities as

"Confidential" documents pursuant to the protective order entered in this case (Dkt. 16); (3) if

any Party in this case (Plaintiffs, Grizzly, or the Subpoenaed Entities) desires to offer any of

these *BD-Corbett* documents (or any further redacted documents if such redactions are pursuant

to the stipulation of the Parties) in evidence during the September 24th evidentiary hearing they

may do so; and (4) if any Party in this case or in the *BD-Corbett* case desires this court to

maintain any such offered *BD-Corbett* documents under seal, they may so move the court not

later than the time of the September 24th evidentiary hearing and shall provide good cause for

why this court should keep such documents under seal.

### III.   CONCLUSION

As more fully explained in this Opinion and Order, Grizzly's Amended Motion to

Compel (Dkt. 3) is GRANTED IN PART AND DENIED IN PART, SawStop's Motion for

Limited Discovery (Dkt. 19) is GRANTED IN PART AND DENIED IN PART, and Plaintiffs'

Motion for Leave to Provide Certain Documents for *In Camera* Review (Dkt. 26) is GRANTED

IN PART AND DENIED IN PART.

IT IS SO ORDERED.

DATED this 26th day of September, 2012.

/s/  Michael H. Simon
Michael H. Simon
United States District Judge