IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **STEVEN SANTELLA** and **SONYA SANTELLA**, | Case No. 3:12-mc-00131-SI |
| Plaintiffs, | |
| v. | **OPINION AND ORDER** |
| **GRIZZLY INDUSTRIAL, INC. f/k/a Grizzly Imports, Inc.**, | |
| Defendant, | |
| v. | |
| **SAWSTOP, LLC; SD3, LLC;** and **STEPHEN F. GASS, PH.D.**, | |
| Subpoenaed Entities. | |

Jeffrey Steven Shelly, BOIES, SCHILLER AND FLEXNER, Albany, New York. Attorney for Plaintiffs.

James D. Meadows, BALCH & BINGHAM, LLP, Atlanta, Georgia; and Kenneth J. Abere, Jr., COSGRAVE VERGEER KESTER, LLP, Portland, Oregon. Attorneys for Defendant.

David A. Fanning, SAWSTOP, LLC, Tualatin, Oregon. Attorney for Subpoenaed Entities.

**SIMON, District Judge**.

SawStop, LLC, SD3, LLC, and Dr. Stephen Gass (collectively "SawStop) filed a motion requesting that the Court reconsider part of its Opinion and Order issued on September 17, 2012 (Doc. 27), amended on September 26, 2012. Doc. 40. The motion for reconsideration concerns the Court's partial grant of Defendant Grizzly Industrial's motion to compel and the Court's subsequent order that SawStop produce un-redacted copies of three pages from two similar sets of offering documents: SawStop 000013 ('13), SawStop 000016 ('16), SawStop 000090 ('90). Doc. 27, at 6–10. SawStop also moves, in the alternative, for an order certifying the issue for appeal. For the following reasons, SawStop's Motion for Reconsideration and Alternative Motion to Certify the Issue for Appeal (Doc. 33) are DENIED.

SawStop's argument against disclosure invokes the common interest doctrine, which is an exception to waiver of attorney-client privilege. SawStop, however, has not shown that it shares a sufficient common legal interest with the recipients of the two documents at issue, prospective investors, to support application of the common interest doctrine. Although SawStop argues that other courts have found a sufficient common interest in "valid and enforceable patent rights," such a sufficient common interest has always been found to be part of a closer and more tangible legal concern. *See, e.g.*, *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1388–90 (Fed. Cir. 1996) (parties jointly prosecuted the patents, one sought to commercialize the technology and the other sought royalties); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 309 (N.D. Cal. 1987) ("[I]t seems clear that [buyer and seller] anticipated litigation in which they would have a common interest."); *Morvil Tech., LLC v. Ablation Frontiers, Inc.*, 10-CV-2088-BEN BGS, 2012 WL 760603, at *3 (S.D. Cal. Mar. 8, 2012) ("Medtronic and AFI were contemplating the wholesale acquisition of AFI by Medtronic. . . . AFI and Medtronic shared

Page 2 – OPINION AND ORDER

common legal interests in whether the products that AFI and Medtronic would market infringed third party IP.").

There is no sufficiently close and tangible legal concern present here. The sole reason the recipients of the documents—potential investors—would be interested in the "legal advice" found therein would be to estimate their opportunity for pecuniary gain, a purely commercial concern. *See Johnson Matthey, Inc. v. Research Corp.*, 2002 WL 1728566, at *6 (S.D.N.Y. July 24, 2002), *reconsidered on other grounds*, 2002 WL 31235717 (the potential for diminished royalty income was insufficient to create a common interest). Moreover, there is no colorable argument that SawStop's potential investors faced any extraordinary legal risks beyond those inherent in investing in a start-up company. *See, e.g.*, *Hewlett-Packard*, 115 F.R.D. at 309 (purchaser might face patent infringement suit); *Morvil*, 2012 WL 760603, at *3 (same). Without such a close and tangible legal concern—aside from general economic interest in investing in a company that had valid intellectual property rights—the common interest doctrine threatens to create an intellectual property exception to the attorney-client privilege waiver doctrine.

SawStop also argues that the practical effect of finding a waiver here would be to place entities seeking investors in the untenable position of potentially misleading investors or waiving attorney-client privilege. SawStop states that in *Hewlett-Packard*, the court found similar concerns persuasive stating, "courts should not create procedural doctrine that restricts communication between buyers and sellers, erects barriers to business deals, and increases the risk that prospective buyers will not have access to important information." *Hewlett-Packard*, 115 F.R.D. at 311. Although the Court appreciates SawStop's efforts to make a full disclosure to its potential investors, the Court must also be mindful to "construe the [attorney-client] privilege narrowly." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1128 (9th Cir. 2012) (citing *Univ. of Pa. v.*

Page 3 – OPINION AND ORDER

*EEOC*, 493 U.S. 182, 189 (1990)). In addition, the record before the Court implicates SawStop's asserted concern substantially less than the parties' conduct in *Hewlett-Packard* because SawStop's relationship with its potential investors was in its infancy. *Hewlett-Packard*, 115 F.R.D. at 308 (disclosure of the opinion letter occurred only after one-on-one discussions had commenced); *see also High Point SARL v. Sprint Nextel Corp.*, CIV.A. 09-2269-CM, 2012 WL 234024 (D. Kan. Jan. 25, 2012) *on reconsideration in part*, 2012 WL 1580634 (D. Kan. May 4, 2012) (disclosure occurred only after a non-disclosure agreement was executed with the prospective purchaser); *Morvil*, 2012 WL 760603, at *3 ("[B]oth parties were committed to the transaction and working towards its successful completion.").

      The cases cited by SawStop are further distinguishable in a very important respect. In each case, every party asserting the common interest doctrine had entered into a one-on-one relationship with the recipient of the specific legal advice and that relationship was manifested in some reciprocal agreement. *See In re Regents*, 101 F.3d at 1388–90 (two parties entered into an exclusive option agreement); *Morvil*, 2012 WL 760603, at *2 (two parties entered into "a strict confidentiality agreement" to protect "shared legal analysis"); *High Point*, 2012 WL 234024, at *6 (although there were multiple "affiliated companies and other prospective patent purchases," disclosure was made only after parties entered into an non-disclosure agreement ("NDA") or other form of confidentiality agreement); *Hewlett-Packard*, 115 F.R.D. at 308–09 (the specific receiving party was instructed how to handle and return the confidential opinion letter).

      Finding a waiver in SawStop's actions by mailing its investment "offering package" to prospective investors does not condemn every company seeking investors to choosing between making misrepresentations or waiving attorney-client privilege. Instead, as it occurred in the

cited cases, companies can wait until they have entered into a more formal negotiating relationship and confidentiality agreement before disclosing privileged information, which would further assist in demonstrating the existence of a common interest. *Cf. In re Pac. Pictures Corp.*, 679 F.3d at 1129 ("The parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten."); *Katz v. AT&T Corp.*, 191 F.R.D. 433, 438 (E.D. Pa. 2000) ("[T]he plaintiffs failed to meet their burden of showing the requisite identity of interests required under the doctrine because the parties had not reached an agreement, final or otherwise, as to the licensing issues prior to the signing of the agreement.").

In summary, the Court is not persuaded that the common interest doctrine is applicable when the disclosure of legal advice is to an unknown number of potential investors, there is no formal confidentiality agreement between the parties, and the parties' sole joint legal interest is in valid intellectual property rights needed in order to maximize the value of an investment. Because SawStop does not establish that it had a common interest with the recipients of the documents at issue (SawStop 000006–000079; SawStop 000080–000151), it waived attorney-client privilege with respect to the redacted sentences found on SawStop 000013, 000016, and 000090. Therefore, SawStop's Motion for Reconsideration is DENIED. Doc. 33.

SawStop also asked this Court, in the alternative, to certify the issue for appeal pursuant to 28 U.S.C. § 1292(b). A court may certify an issue if three requirements are met: (1) "a controlling question of law" must be present; (2) there must be a "substantial ground for difference of opinion" as to the controlling question; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *See* 28 U.S.C. § 1292(b). The party seeking interlocutory appeal has the burden of ensuring all three requirements are met. *See Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). Even if

the three statutory criteria were met, however, a court still has the discretion to deny certification. *Brizzee v. Fred Meyer Stores, Inc.*, CV 04-1566-ST, 2008 WL 426510, at *3 (D. Or. Feb. 13, 2008) (citing *Exec. Software N. Am., Inc. v. United States Dist. Ct. Cent. Dist. of Cal.*, 24 F3d 1545, 1550 (9th Cir. 1994)).

SawStop makes no argument as to why this issue is appropriate for certification; further, the Court finds that immediate appeal will not "materially advance the ultimate termination of the litigation." *See* 28 U.S.C. § 1292(b). Therefore, SawStop's alternative Motion to Certify the Issue for Appeal is DENIED. Doc. 33.

## CONCLUSION

SawStop's Motion for Reconsideration and Alternative Motion to Certify the Issue for Appeal (Doc. 33) are DENIED.

IT IS SO ORDERED.

DATED this 5th day of November, 2012.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge